UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
NYTDA, Inc.,

                               Plaintiff,

                    -against-

CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF FINANCE, JANE
LANDON, in her individual and official
capacities, MARY GOTSOPOULIS, in her
individual and official capacities and DAVID
FRANKEL, in his individual and official
capacities,

                               Defendants.
------------------------------------------------------x

**<u>ORDER GRANTING
MOTION TO DISMISS</u>**

14-CV-05393 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff New York Trucking & Delivery Association ("NYTDA") alleges that the City of New York (the "City"), acting through the New York City Department of Finance ("Finance Department") and three high-ranking Finance Department officials (collectively, "Defendants"),[1] violated NYTDA's substantive due process rights when it misappropriated proprietary information developed by NYTDA for an online parking ticket adjudication program. NYTDA also asserts State law claims for unfair competition, misappropriation of trade secrets, and unjust enrichment. The Court finds that NYTDA has failed to allege government misconduct of a constitutional dimension to state a substantive due process claim under 42 U.S.C. § 1983 ("Section 1983"). The Court also declines to exercise supplemental jurisdiction over NYTDA's remaining State law claims and thus dismisses NYTDA's First Amended Complaint (Dkt. 16 ("FAC")) in its entirety.

---

[1] These three individual defendants are Finance Department Commissioner David Frankel, Deputy Commissioner Jane Landon, and Custodian of Records Mary Gotsopoulis.

# BACKGROUND[2]

In March 2011, the City unveiled "Hearings by Web," an online hearing system for contesting parking tickets. (FAC ¶ 1.) NYTDA alleges that Hearings by Web misappropriates proprietary information from a similar website that NYTDA had developed and demonstrated for the City years earlier, known as "My Parking Ticket Judge" ("MPTJ"). (*Id.* ¶¶ 2, 21.)

*Background of MPTJ.* Since 2004, NYTDA has helped the City run the "Stipulated Fines Program," giving commercial vehicle operators who have received parking tickets the option of paying reduced fines instead of appearing for court hearings. (*Id.* ¶ 19.) In October 2008, NYTDA began developing MPTJ to allow the City's agencies to perform online hearings for parking and other summonses issued to operators of non-commercial vehicles and passenger cars. (*Id.* ¶ 21.) NYTDA met twice with the Finance Department in 2009 to pitch MPTJ. (*Id.* ¶¶ 27, 32.)

*First Meeting (March 11, 2009).* On March 11, 2009, NYTDA Chairman Ken Thorpe demonstrated Version 1 of MPTJ for then-Finance Commissioner Martha Stark. (*Id.* ¶ 27.) Stark expressed interest in a pilot program and represented that she could get the City on board. (*Id.* ¶ 28.) Thorpe promised that before their next meeting, NYTDA would have a complete business strategy for the implementation of MPTJ, along with a second version of the software. (*Id.*) On or about April 28, 2009, however—before a subsequent meeting between Thorpe and the Finance Department could take place—Stark resigned as Finance Commissioner. (*Id.* ¶ 31.)

*Second Meeting (May 7, 2009).* On May 7, 2009, Thorpe, along with representatives from an outside contractor working on MPTJ, met with Deputy Commissioner Jane Landon and Finance

---

[2] The facts in this section are drawn from the allegations contained in the FAC, and they are deemed to be true for the purposes of this motion. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (a district court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff). The Court recounts only those facts relevant to the instant motion.

Department employee Mary Gotsopoulis for two hours. (*Id.* ¶ 32.) During the meeting, Thorpe "demonstrated all of the features of Version 2 of MPTJ via a live website demonstration at mptjbeta.com; a Powerpoint presentation of the processes; and a video." (*Id.*) Thorpe also provided Landon and Gotsopoulis with, among other things, a 45-page document entitled "MPTJ.com Conceptual Design: MPTJ.com Website Product Development," containing information on "customer-facing functionality," agency-support functionality, and system administration. (*Id.*) Landon was also apparently given a password to access Versions 1 and 2 of the MPTJ website. (*See id.* ¶ 37.) Landon questioned Thorpe and the outside contractor employees who had accompanied him in detail about MPTJ. (*Id.* ¶ 32.) At one point during the meeting, and in front of all the attendees, Landon asked Thorpe: "What would stop me from taking this for myself?" (*Id.* ¶ 33.) Although Landon stated at the end of the meeting that she would be in contact with NYTDA, Thorpe was unable to reach Landon again following the meeting. (*Id.* ¶¶ 33-36.)

*Hearings by Web.* On or about May 21, 2011, the City publicly announced the launch of Hearings by Web. (*Id.* ¶ 38.) By letter dated September 9, 2013 to Finance Department Commissioner David Frankel, NYTDA requested that the City compensate it for the misappropriation of NYTDA's intellectual property. (*Id.* ¶ 39.) On September 18, 2013, NYTDA served a notice of claim on the City concerning the same. (*Id.*) By letter dated January 2, 2014 to NYTDA's attorney, the City requested additional information concerning the claim. (*Id.* ¶ 40.) After providing the requested information on January 7, 2014, NYTDA did not hear back again from the City. (*Id.* ¶ 41.) NYTDA commenced this suit on September 15, 2014. (Dkt. 1.)

## DISCUSSION

Defendants originally moved to dismiss NYTDA's substantive due process claim on the ground that NYTDA failed to exhaust its state law remedies under Article 78 prior to asserting

3

such a claim.[3] (Dkt. 24 at ECF 21-24.) On January 14, 2016, however, the Court sought additional briefing from NYTDA on what it perceived to be an even more fundamental—and potentially dispositive—question: whether the conduct of which NYTDA complains constitutes an abuse of governmental authority implicating the doctrine of substantive due process at all ("January 14 Order"). Having considered NYTDA's additional briefing, (Dkt. 28 ("NYTDA Ltr.")),[4] this Court concludes that it does not. The Court will not address the other arguments asserted by Defendants.

The Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of government." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884)). Procedural due process requires that government action depriving an individual of substantial interests in life, liberty or property "be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739, 746 (1987). Substantive due process, on the other hand, bars "certain government actions regardless of the fairness of the procedures used to implement them," in order to "prevent governmental power from being used for purposes of oppression." *Daniels*, 474 U.S. at 331 (internal quotations and citation omitted); *McClary v. O'Hare*, 786 F.2d 83, 88 (2d Cir. 1986). In *Daniels*, the United States Supreme Court held that the negligent conduct of prison officials—in that case, leaving a pillow on a prison staircase and causing an inmate to slip and fall—was "[f]ar from an abuse of power" and more appropriately

---

[3] The Court notes that though it refers to "substantive due process claim" in the singular, NYTDA asserts two such claims: one against the City and Finance Department in NYTDA's First Cause of Action and one against the individual Defendants in the Second. The Court finds that the analysis is the same for both for the purposes of the issues addressed in this decision.

[4] On February 5, 2016, Defendants sought leave to file a short supplemental letter brief in response to NYTDA's supplemental submission, which included the letter brief itself. (Dkt. 29.) NYTDA filed a letter objecting to this submission. (Dkt. 30.) The Court will accept Defendants' letter brief; it finds, however, that Defendants' submission does not raise any new arguments not contained in the Court's January 14 Order. Accordingly, the Court does not find it necessary to provide NYTDA with a further opportunity to respond to Defendants' letter.

governed by principles of tort law, not constitutional law. *See Daniels*, 474 U.S. at 332 ("The only tie between the facts of this case and anything governmental in nature is the fact that respondent was a sheriff's deputy at the Richmond city jail and petitioner was an inmate confined in that jail."). And in *McClary*, the Second Circuit similarly held that a government official's reckless actions with respect to the safety and operation of a crane, which resulted in the death of a government employee, did not implicate the doctrine of substantive due process. *See McClary*, 786 F.2d at 89 ("This is simply not a case in which a government official, because of his unique position as such, was able to impose a loss on an individual.")

NYTDA argues that the City's *intentional* misconduct in this action distinguishes this case from *Daniels* and *McClary*, which involved, respectively, acts of negligence and recklessness. (*See* NYTDA Ltr. at 1.) It is true that intentional conduct by a government actor raises the specter of an abuse of governmental power in a way that negligent and reckless conduct typically do not. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("It is . . . behavior at the other end of the culpability spectrum [from negligence] that would most probably support a substantive due process claim."). But the Court rejects NYTDA's suggestion that *Daniels* and *McClary* do not apply at all here, and that intentional conduct by a governmental actor automatically rises to the level of a due process violation. Indeed, the principle articulated in *McClary* that "improper actions taken by employers [do not] violate an employee's substantive due process rights simply because that employer is a government official," 786 F.2d at 89, has been extended by courts in this Circuit to cases involving *intentional* employment discrimination. *See, e.g.*, *Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 334, 353 (E.D.N.Y. 2013) (involving alleged ADA and ADEA violations); *Sussman v. New York City Health & Hosps. Corp.*, No. 94-cv-8461, 1997 WL 334964, at *12 (S.D.N.Y. June 3, 1997) (involving alleged retaliation and manufacture of false

5

evidence on part of government employer). Rather, the threshold question for establishing a constitutional due process claim remains whether a governmental actor "abuses power that it holds because of its role as a government actor." *Bertram v. Metro. Transp. Auth.*, No. 13-cv-338, 2014 WL 748933, at *7 (S.D.N.Y. Feb. 26, 2014) (citing *McClary*, 786 F.2d at 89); *Spencer v. City of New York*, No. 06-cv-2852, 2007 WL 1573871, at *2 (S.D.N.Y. May 30, 2007).

Here, NYTDA fails to point to any abuse of power that is unique to Defendants' positions as government actors, as the Court specifically directed in its January 14 Order. Nor can the Court discern such an abuse of governmental power from the allegations in the FAC, even when drawing all reasonable inferences in favor of NYTDA. NYTDA asserts simply that it has alleged "plausibly and in detail [] that Defendants deliberately, willfully, and intentionally misappropriated NYTDA's intellectual property," highlighting Landon's remark at the May 7, 2009 meeting of "[w]hat would stop me from taking this for myself?" (NYTDA Ltr. at 2.) At bottom, however, this is the type of willful and wrongful conduct that *any* private actor could engage in, and it is therefore one that is properly resolved under well-settled principles of State tort law rather than federal constitutional law. *See County of Sacramento*, 523 U.S. at 848 (noting that the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States") (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)).[5]

---

[5] The Court finds no meaningful difference between the instant case and one in which a government entity simply acts as a contracting party. *See N. Star Contracting Corp. v. Long Island Rail Rd. Co.*, 723 F. Supp. 902, 909, 911 (E.D.N.Y. 1989) (finding "no sign of the deliberate and unjustified abuse of governmental authority that would turn [plaintiff's] claim into one of constitutional dimension" where the plaintiff alleged that the government "maliciously depriv[ed] [it] of its vested contract rights"); *Christ Gatzonis Elec. Contractors, Inc. v. New York City Sch. Const. Auth.*, No. 93-cv-2418, 1993 WL 666697, at *3 (E.D.N.Y. Sept. 17, 1993), *aff'd* 23 F.3d 636 (2d Cir. 1994) (government's alleged breach of contract "does not amount to misuse of governmental authority" so as to violate substantive due process). In both, the government is acting in a proprietary capacity, the same as any private actor in the market. By contrast, the few

Finding dismissal of NYTDA's substantive due process claim—its sole federal claim—appropriate, the Court declines to exercise supplemental jurisdiction over NYTDA's State law claims. Where, as here, the federal claims "are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350 n.7 (1988); *see also Oneida Indian Nation of New York v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) ("[W]e have repeatedly said that 'if a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well.'") (quoting *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010)); 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction").

## CONCLUSION

For all of the foregoing reasons, the Court dismisses NYTDA's FAC in its entirety, without prejudice to NYTDA's ability to bring its State law claims in State court. The Clerk of Court is respectfully directed to enter judgment accordingly.

SO ORDERED:

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 16, 2016
 Brooklyn, New York

---

cases NYTDA cites as supporting authority involve exercises of uniquely governmental powers in the land use regulatory process and are therefore inapposite. (*See* NYTDA Ltr. at 3.)